IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-20165-STA |
| | ) | |
| MANZO COACH, | ) | |
| | ) | |
| Defendant. | ) | |

_____

ORDER OF COMPETENCY
_____

On April 27, 2010, the Court conducted a hearing to determine the Defendant's

competency to stand trial.  For the reasons set forth below, the Court finds that Defendant is

competent to stand trial in this case.

## BACKGROUND

On May 20, 2008, Defendant Manzo Coach was indicted on one count of being a felon in

possession of a firearm in violation of 18 U.S.C. § 922(g).  On October 16, 2008, Defendant

through counsel filed a motion for mental evaluation pursuant to 18 U.S.C. 4241, which the

Court granted.  An evaluation was conducted at the Federal Bureau of Prisons Metropolitan

Detention Center in Los Angeles, California ("MDC-LA").  An initial forensic evaluation dated

January 30, 2009, was presented to the Court, which concluded that Defendant was not presently

competent to stand trial.  The evaluation noted that Defendant "demonstrated an impaired

understanding of the nature and consequences of the court proceedings against him and an

inadequate ability to cooperate and assist counsel in his defense."  The evaluation reported that

1

Defendant's "behavior was guarded and minimally cooperative."[1]  In describing the problems in communicating with Defendant, the evaluation stated, "It was unclear whether Mr. Coach's difficulty providing information was due to a poor memory for, or understanding of, life events, an inability or unwillingness to communicate with the evaluators, or some combination thereof."[2] Defendant's Full Scale IQ was measured at 56, placing him in Extremely Low range of intellectual functioning.[3]  However, the evaluation observed that Defendant "demonstrated a relatively low effort throughout testing" and posited that his IQ results "should be considered an underestimate of" his capacity.[4]  Likewise, with respect to other tests, the evaluation noted Defendant's "significant deficits" in intellectual, memory and adaptive functioning but that the "true extent of his deficits. . . remains unknown."[5]  The forensic psychology team concluded that Defendant suffered from a major mental disorder, namely Mild Mental Retardation, and that this condition "significantly" impaired "his ability to recall events in his past, as well as to learn and retain new information, such as the nature and consequences of the court proceedings against him."[6]  It was recommended that Defendant be committed to a federal medical center for

---

[1] Forensic Evaluation , Jan. 30, 2009 ("the first evaluation"), 11.

[2] *Id.*

[3] *Id*. at 12.

[4] *Id*. (noting Defendant's prior IQ scores were 10 to 20 points higher than his current score).

[5] *Id*. at 14.  ("his performance should be considered an underestimate of his true abilities in these areas, as behavioral observation and testing suggest low test effort on his part").

[6] *Id*. at 18.

2

treatment for restoration to competency.[7]  The Court accepted that recommendation and on May

14, 2009, ordered that Defendant be committed to a federal facility for the restoration to

competency.

On January 15, 2010, the Court received a Certificate of Restoration to Competency to

Stand Trial and a letter from the warden at the Federal Medical Center-Butner, North Carolina

("FMC-Butner").[8]  A second forensic evaluation was completed by Robert G. Lucking, M.D., at

FMC-Butner.  The Court also received testimony from Dr. Lucking at the April 27, 2010

competency hearing.  In Dr. Lucking's opinion, Defendant was competent to stand trial.

According to his evaluation and testimony, Dr. Lucking diagnosed Defendant on Axis I:

Malingering, and on Axis II: Antisocial Personality Disorder and Borderline Intellectual

Functioning.[9]  The evaluation explains that the "essential feature of Malingering is the

intentional production of false or grossly exaggerated physical or psychological symptoms."[10]

Dr. Lucking reported that the forensic evaluation at FMC-LA documented under-performance

and lack of effort and motivation, which "is highly suggestive of malingering."  Like the

evaluation team at FMC-LA, Dr. Lucking found Defendant to be uncooperative during most of

his testing at FMC-Butner.  Dr. Lucking stated in his evaluation that "[w]ith individuals who

---

[7] *Id*.

[8] See 18 U.S.C. § 4241(e) ("When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment.").

[9] Forensic Evaluation, Jan. 14, 2010, 24.

[10] *Id*. at 25.

3

malinger it is frequently difficult to find any direct evidence of the individual's competency, due to the failure to cooperate in the evaluation, attempts at deception and intentional under-performance."[11]  In that situation, examiners must rely on indirect evidence such as inconsistencies on psychological testing.  For example, Dr. Lucking observed that Defendant's IQ score was measured at 56 in 2009 during Defendant's evaluation at FMC-LA; however, Defendant's IQ was measured at 69 in 1993 and then at 79 in 2000.  According to Dr. Lucking, "[t]here is no medical, psychiatric, or neurological" explanation for the decline between 2000 and 2009.[12]  Additionally, Defendant performed "significantly worse" on some tests administered at FMC-Butner than he did on the same tests at FMC-LA.[13]  Based on these and other observations noted in the evaluation, Dr. Lucking concluded that Defendant was presenting himself as more impaired than he actually is.

While acknowledging that Defendant has cognitive deficits, Dr. Lucking believed that the deficits did not render him not competent to stand trial.  Rather Dr. Lucking opined that Defendant engaged in this pattern of behavior in order to be found not competent, which in itself demonstrated Defendant's understanding of the legal proceedings against him.  For that reason Dr. Lucking opined that Defendant had the capacity to assist counsel if he chose to do so.  Dr. Lucking stated in his evaluation that Defendant behaves as he does because "it is an intentional plan with a specific goal in mind."[14]  In addition to the inconsistent results of specific tests, Dr.

---

[11] *Id*. at 15-16.

[12] *Id*. at 29.

[13] *Id*. at 16, 18.

[14] *Id*. at 30.

Lucking noted the factual inconsistencies in Defendant's reports about his family and legal history.  Defendant stated several times during the evaluation process, "I'm not competent.  They found me not competent."[15]  Finally, the evaluators at FMC-LA concluded that Defendant could be restored to competency if given additional education, particularly about court proceedings. Dr. Lucking stated that Defendant did not make any effort to learn the material required for competency restoration while at FMC-Butner and "insisted he could not learn" it.  In fact, Dr. Lucking determined that Defendant understood the charges against him, his option to plead guilty or not guilty and the consequences of that decision, and his general ability to make decisions in his self interest.  Based on his evaluation of Defendant, Dr. Lucking opined that Defendant was presently competent to stand trial.

At the competency hearing, the government argued that Defendant was competent to understand the nature and consequences of his actions.  According to the government, Dr. Lucking's evaluation and testimony shows by a preponderance of the evidence that Defendant does not want to be rendered competent.  Therefore, the Court should find Defendant competent to stand trial.  Counsel for Defendant contended that Dr. Lucking appeared to be very biased. The results from the FMC-LA evaluation are consistent with early tests dating back to Defendant's school years.  The first evaluation described Defendant's deficits as "severe." Therefore, the Court should reject Dr. Lucking's diagnosis and send Defendant for a third evaluation.

## ANALYSIS

A defendant meets the constitutional standard for competency if he has: (1) the sufficient

---

[15] *Id*. at 12.

present ability to consult with his counsel, (2) with a reasonable degree of rational understanding, and (3) a rational, factual understanding of the criminal proceedings against him.[16]  The determination of a defendant's competence is a factual finding.[17]  "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required but . . . even one of these factors standing alone may in some circumstances be sufficient"[18]  Where a defendant has been committed for restoration of competency and the facility certifies that the defendant has in fact recovered competency, the Court must hold a hearing to determine the competency of the defendant.[19]  The Court has to determine whether "by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense."

In the case at bar, the Court finds by a preponderance of the evidence that Defendant is presently able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  Dr. Lucking found that Defendant does not suffer from any mental illness or disorder that would affect his competency to stand trial.  On the contrary, Dr. Lucking presented significant evidence that Defendant was malingering and that the deficits he does have would not prevent him from understanding the charges against him or the court

---

[16] *Godinez v. Moran*, 509 U.S. 389, 398-99, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *See also United States v. Coomes*, 106 F. App'x 967, 968 (6th Cir. 2004).

[17] *United States v. Branham*, 97 F.3d 835, 855 (6th Cir. 1996).

[18] *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896 (1975).

[19] 18 U.S.C. § 4241(e).

proceedings involved.  According to both mental evaluations at FMC-LA and FMC-Butner,

Defendant failed to cooperate with the examiners and that some of the test results, particularly

Defendant's IQ scores, were an underestimate of Defendant's actual abilities.  Dr. Lucking

believed that Defendant understood the importance of his competency evaluations and

intentionally underperformed, which itself suggested that Defendant understood the seriousness

of his charges and the proceedings.  It is true that the evaluation from FMC-LA diagnosed

Defendant with Mild Mental Retardation and found that Defendant was not presently competent.

Even with Defendant's underestimated IQ score and lack of cooperation, the FMC-LA

evaluation opined that Defendant could be restored to competency with additional education.

Once Defendant was sent to FMC-Butner, Defendant continued to be uncooperative and at times

openly refused to participate in his treatment at FMC-Butner.  Nevertheless, the evidence shows

that Defendant demonstrated an understanding of the allegations against him and the significance

of the competency finding.  Based on Dr. Lucking's forensic evaluation, his testimony at the

hearing, and the evaluation conducted at FMC-LA, the Court finds by a preponderance of the

evidence that Defendant understands the nature and consequences of the proceedings against him

and that he is able to assist properly in his defense.  Therefore, the Court finds that Defendant is

presently competent to stand trial.  Defendant's motion for a third evaluation is denied.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 16th, 2010.

7